UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MICHAEL R. BARNES,

     Applicant,

v.                             CASE NO. 8:15-cv-1938-T-23MAP

SECRETARY, Department of Corrections,

     Respondent.

_____/


**O R D E R**

     Barnes applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1)

and challenges the validity of his state conviction for one count of sexual battery of a

person under twelve years, for which he is imprisoned for life.  Numerous exhibits

("Respondent's Exhibit __") support the response.  (Doc. 7)  The respondent

correctly argues both that the application is time-barred and that Barnes is not

otherwise entitled to a review on the merits.

     The Anti-Terrorism and Effective Death Penalty Act creates a limitation for a

Section 2254 application for the writ of habeas corpus, specifically, 28 U.S.C.

§ 2244(d)(1)(A) states, "A 1-year period of limitation shall apply to an application for

a writ of habeas corpus by a person in custody pursuant to the judgment of a State

court.  The limitation period shall run from the latest of . . . the date on which the

judgment became final by the conclusion of direct review or the expiration of the

time for seeking such review . . . ."  Additionally, under Section 2244(d)(2) "[t]he

time during which a properly filed application for State post-conviction or other

collateral review with respect to the pertinent judgment or claim is pending shall not

be counted toward any period of limitation under this subsection."

Barnes's conviction became final on January 2, 2008.[1]  The limitation expired

one year later on January 2, 2009, because Barnes began no state post-conviction

proceeding.  Twelve days later, on January 14, 2009, Barnes petitioned in the Second

District Court of Appeal and alleged that he was denied the effective assistance of

appellate counsel.  But that proceeding afforded Barnes no tolling because, as shown

above, the limitation expired twelve days earlier.  "[A] properly and timely filed

petition in state court only tolls the time remaining within the federal limitation

period."  *Tinker v. Moore*, 255 F.3d 1331, 1335 n.4 (11th Cir. 2001), *cert. denied*,

534 U.S. 1144 (2002).  Similarly, Barnes's many subsequent challenges could neither

toll nor revive the expired limitation.  Recognizing his application's untimeliness,

Barnes asserts entitlement to both "equitable tolling" to overcome the limitation and

the "actual innocence" exception to the limitation.  Barnes proves entitlement to

neither.[2]

_____

[1] Barnes's direct appeal concluded on October 3, 2007. (Respondent's Exhibit 4) The
conviction became final after ninety days, the time allowed for petitioning for the writ of *certiorari*.
28 U.S.C. § 2244(d)(1)(A). *See Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002), and *Jackson v. Sec'y,
Dep't Corr.*, 292 F.3d 1347 (11th Cir. 2002).

[2] One of Barnes's many unsuccessful post-conviction challenges was based on "newly
discovered evidence."  The state court found that the evidence was not "new" because Barnes "was
made aware at trial that the victim was prescribed the medication." (Doc. 15 at 2) These findings
largely preclude Barnes's entitlement to a new limitation under Section 2244((d)(1)(D) based on
newly discovered evidence; Barnes asserts no entitlement to a new limitation. Nevertheless, the state

**I.**
**NO ENTITLEMENT TO**
**EQUITABLE TOLLING**
**TO OVERCOME THE LIMITATION**

The one-year limitation established in Section 2244(d) is not jurisdictional and, as a consequence, "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). *See Jones v. United States*, 304 F.3d 1035, 1040 (11th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003). Barnes must meet both requirements, and he controls the first — due diligence — but not the second — extraordinary circumstances. The failure to meet either requirement precludes equitable tolling. "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence,'" *Holland*, 560 U.S. at 653 (internal quotations and citations omitted), and an applicant's "lack of diligence precludes equity's operation." 544 U.S. at 419. To satisfy the second requirement, Barnes must show extraordinary circumstances both beyond his control and unavoidable even with diligence. *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). See cases collected in *Harper v. Ercole*, 648 F.3d 132, 137 (2nd Cir. 2011) ("To secure equitable tolling, it is not enough for a party to show that he experienced

───────────────

court's findings are relevant to Barnes's asserted entitlement to "equitable tolling" and to "actual innocence." As discussed later, the state court's findings are entitled to a presumption of correctness.

extraordinary circumstances.  He must further demonstrate that those circumstances

caused him to miss the original filing deadline.").

Barnes contends that he did not timely acquire the complete state court

record, a delay he attributes to his counsel.[3]  Barnes's direct appeal ended on

October 3, 2007.   The exhibits attached to Barnes's reply (Doc. 10) show that a few

weeks later his attorney promptly sent the record to Barnes, but the inmate law clerk

assisting Barnes advised that the first two volumes of the trial transcript were missing.

From the notification to counsel in mid-October, 2007, about the missing volumes

until late April, 2008, Barnes's former counsel attempted to acquire another copy of

the missing volumes, an attempt that concluded with a letter in which counsel

advised Barnes that the public defender's office would obtain and send the missing

volumes.  Barnes provides no explanation about his attempts to acquire the missing

volumes from late April until mid-December, 2008, which is when he represents that

he received the missing volumes.  Under both the respondents' and the district court's

calculation, when Barnes received the missing volumes less than a month remained

before January 2, 2009, when the one-year limitation expired.[4]

---

[3]  Barnes labels this argument as "Point Three" in his reply. (Doc. 10 at 11)

[4]  Barnes had possessed much (if not most) of the record since October, 2007, before the
federal one-year limitation started. Barnes could have timely moved for post-conviction relief in the
state court based on the record he possessed and later supplemented the motion after he received the
missing volumes. Barnes admits to knowing about the federal limitation. In his letter dated January
25, 2008, Barnes advised his former counsel about his "1 year time limitations [under the]
A.E.D.P.A." (Barnes's Exhibit 6, Doc. 10 at 32)

Based on the above facts, Barnes asserts entitlement to equitable tolling because counsel's failure to timely provide the record is ineffective assistance.  In his reply (Doc. 10 at 11) Barnes argues against penalizing him for what he characterizes as counsel's "gross negligence:"

> Petitioner believes that the agency principle should not be applied to a petitioner whose attorney's ineffective assistance during the initial collateral review proceeding impeded his ability to file a timely 2254 petition.  Barring the agency principle would allow the gross negligence of counsel (i.e., ineffective assistance) to be seen as extraordinary circumstance to lift the procedural bar of an untimely filed 2254 petition.

Contrary to Barnes's request, principles of agency apply to Barnes's circumstance. "Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).  *See also Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel."), and *Holland v. Florida*, 560 U.S. 631, 656 (2010) ("[O]ur prior cases make it abundantly clear that attorney negligence is not an extraordinary circumstance warranting equitable tolling.").

Even if he could meet the due diligence requirement, which would require ignoring the April to December delay, for which Barnes provides no explanation, Barnes fails to show that an extraordinary circumstance caused him to miss the

deadline.  Consequently, Barnes fails to show entitlement to equitable tolling of the

limitation, and the untimely application is not entitled to a review on the merits.

## II.
## NO ENTITLEMENT TO THE
## ACTUAL INNOCENCE
## EXCEPTION TO THE LIMITATION

A review of the state's case against Barnes is necessary to understand his claim

of entitlement to the actual innocence exception to the limitation.[5]  To summarize,

Barnes contends (1) that a report or a form,[6] which he characterizes as new evidence,

shows that the victim was administered medication to treat her seeing imaginary

friends[7] and (2) that the prosecutor, contrary to *Brady v. Maryland*, 373 U.S. 83 (1963),

failed to disclose that the medication was approved to treat schizophrenia.[8]  As

discussed below, neither of Barnes's contentions qualifies as "new evidence"

necessary for entitlement to the actual innocence exception to the limitation.

Although Barnes can escape the limitation if he can show that he is "actually

innocent" of the offense, actual innocence is not a separate claim that challenges the

conviction but a "gateway" through which a defendant may pass to assert an

otherwise time-barred or procedurally barred federal claim.  Passing through the

---

[5]  Barnes asserts no claim of actual innocence as a "free standing" claim, but only as a means of escaping the limitation's bar. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.") (citing *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993)).

[6]  "Report" and "form" are used interchangeably by the state court and Barnes.  This order uses the term "report."

[7]  Barnes labels this argument as "Point One" in his reply. (Doc. 10 at 5)

[8]  Barnes labels this argument as "Point Two" in his reply. (Doc. 10 at 8)

gateway is difficult because "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The gateway is narrow and opens "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin, Warden v. Perkins*, 133 S. Ct. 1924, 1936 (2013) (quoting *Schlup v. Delo* 513 U.S. 298, 316 (1995)).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Although demanding, *House v. Bell*, 547 U.S. 518, 538 (2006) (internal citation omitted), explains that the applicant's burden is not proving absolute innocence:

> [I]t bears repeating that the *Schlup* standard is demanding and permits review only in the "extraordinary" case. At the same time, though, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt — or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

A sufficient showing of actual innocence can overcome the limitation bar, as *Perkins*, 133 S. Ct. at 1928 (brackets original), explains:

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House,* or, as in this

case, expiration of the statute of limitations. We caution,
however, that tenable actual-innocence gateway pleas are rare:
"[A] petitioner does not meet the threshold requirement unless
he persuades the district court that, in light of the new evidence,
no juror, acting reasonably, would have voted to find him guilty
beyond a reasonable doubt." *Schlup,* 513 U.S., at 329, 115 S. Ct.
851; see *House,* 547 U.S., at 538, 126 S. Ct. 2064 (emphasizing
that the *Schlup* standard is "demanding" and seldom met).

## A.
## The Report does not Qualify as "New Evidence"
## Under the Actual Innocence Exception to the Limitation

### Background:

Barnes was charged with three counts of sexual battery of a person under

twelve.  A jury found Barnes guilty of one count of sexual battery and two counts of

the lesser-included charge of battery.  The victim was the daughter of Barnes's

"live-in" girlfriend of eight years.  During trial questions arose about the victim's

mental health, her seeing a counselor, and her taking medication.  After an

evidentiary hearing in one of Barnes's post-conviction proceedings, the state court

found the following (Respondent's Exhibit 11 at 1–2):

> Defendant testified that he learned of the victim's mental health
> treatment during the trial. When he learned this information, he
> wanted to restart the trial. Every discussion that was had was
> done on the record. Trial counsel never discussed the issue with
> Defendant personally and his opinion was never sought.
> Defendant testified that he lived with the victim for eight years
> prior to the charges being brought against him. The child never
> mentioned that she had imaginary friends and she was not
> receiving mental health treatment during this time.
>
> [The prosecutor] testified that she was the State Attorney
> assigned to this case. The day before trial, she learned that the
> victim was going to counseling and that she was on an
> Attention Deficit Disorder medication. [The prosecutor] did not
> believe that she needed to disclose the information to the

defense as it had no bearing on the case. Both the mother and victim had been deposed prior to trial and the mother was listed as a defense witness. The mother brought the issue of the imaginary friends to the defense's attention. [The prosecutor] did not know of the imaginary friends before the defense attorney. The victim at all times appeared to be a competent witness. . . . The mother said that the counselor was seen to help the victim focus better and that the medication helped the child. By the time the information came up at trial, the State had already rested its case.

A year later Barnes filed another motion for post-conviction relief, which he contended was based on newly discovered evidence. The post-conviction court denied relief without conducting an evidentiary hearing with the following findings (Respondent's Exhibit 15 at 1–3) (citation to trial transcript omitted):

The Defendant's current Motion raises [a claim of n]ewly discovered evidence that the victim was treated for symptoms including seeing imaginary ghosts, agitation, aggression, and difficulty sleeping[.]

To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements: first, the evidence must not have been known by the party or counsel at the time of trial, and the defendant or defense counsel seemingly could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such a type that it would probably produce an acquittal on retrial. *See Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998).

The alleged newly discovered evidence is a form indicating the victim was prescribed Geodon (ziprasidone) on August 3, 2006. The Defendant's own Motion cites to portions of the trial transcript which show he was made aware at trial that the victim was prescribed this medication, and the symptoms for which they were prescribed. Furthermore, a portion of the trial transcript not referenced in Defendant's Motion shows testimony by the victim's mother informed the Defendant at the time of trial why the victim was prescribed the medication:

Q. Now, you may not know specifically what she's on, but do you know if she's taking any medications, psychotropic medication?

A. Yeah. She's taking Geodon.

Q. And what is that?

A. It is —

Q. As best you know.

A. It helps her with her mood swings. It helps her calm down. She's not as mouthy. She's not as rude and disrespectful. She sleeps better at night, through the night rather than getting up. It helps her focus on her school work. It helps her focus on home, rather than just doing something one minute and then turning around and doing something else. She gets tasks done.

Q. Does it assist her in seeing things that — with her problem of seeing things that aren't there?

A. Yes, sir. Yes, sir. It helps her not see her friends, Kodax and them. She's not mentioned them since she's got on this medication.

Q. Are there any other mental health problems that you see in her?

A. They've diagnosed her with ADD.

This portion of the record directly refutes the Defendant's claim. The Defendant appears to allege that although this information was first learned during the trial, it would still meet the definition of newly discovered evidence as the trial had already been in progress. This is also incorrect. The trial was held in August of 2006. More than two years have elapsed from this date which is not only the time within which the Defendant could have obtained the information, but as the transcript shows is the time the Defendant actually learned the information. Obtaining the report years later, which only confirms what was learned earlier, does not meet the definition of newly discovered evidence.

**Analysis:**

Barnes's "new evidence" is a report that showed the victim was prescribed Geodon (ziprasidone), apparently to "help her stay focused" and "not see her [imaginary] friends." Barnes contends that the report is evidence that the victim could have fabricated her allegation of sexual battery. The post-conviction court found both that the victim's taking Geodon was disclosed during trial testimony and that Barnes "was made aware at trial that the victim was prescribed this medication and the symptoms for which they were prescribed." As 28 U.S.C. § 2254(e)(1) explains, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Barnes presents no basis for rejecting the state court's finding. As a consequence, the report, which corroborated the previously-disclosed fact, is not "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324. Moreover, the report is not compelling evidence that, if presented to the jury, meets *Schlup's* standard "that more likely than not any reasonable juror would have reasonable doubt" about Barnes's guilt.

**B.**
**The Alleged *Brady* Violation does not Qualify as "New Evidence"**
**Under the Actual Innocence Exception to the Limitation**

**Background:**

Barnes contends that the prosecutor violated *Brady* by failing to disclose that the victim was prescribed Geodon to treat schizophrenia. The post-conviction court

denied relief without conducting an evidentiary hearing with the following findings

(Respondent's Exhibit 15 at 3) (citation to trial transcript omitted) (brackets original):

> The Defendant alleges the Assistant State Attorney purposely
> withheld the exculpatory evidence that Geodon was prescribed
> to the victim for schizophrenia. First, the Defendant has failed
> to allege the victim was in fact diagnosed with schizophrenia,
> and appears to make this claim based on his observations of the
> victim's symptoms. Second, the Defendant attaches to his
> Motion a print out of a website, WebMD, indicating the uses
> for Geodon in an attempt to show the Assistant State Attorney
> lied to the Court in stating she had only learned the day prior
> that this medication was prescribed for something other than
> ADHD. The Defendant's "Exhibit B" is a representation of the
> WebMD webpage for Geodon as it existed on July 19, 2013. It
> is in no way an indication as to the content contained on that
> webpage in or around August of 2006. Third, the victim's
> mother testified that she had informed the Assistant State
> Attorney that the victim was taking the medication for ADD.
> Finally, this claim is similar to claim 5 of Defendant's first
> Motion for Post Conviction Relief. In the order denying that
> claim, this Court specifically concluded, after holding an
> evidentiary hearing, that "[t]he Court does not find that the
> State committed a discovery violation or that Defendant's
> ability to properly prepare for trial was hindered."

**Analysis:**

Barnes's "new evidence" is that the prosecutor "failed to disclose material

exculpatory evidence to the defense during trial that the medication 'Geodon' was

also used to treat schizophrenia . . . ." (Doc. 10 at 8)  The post-conviction court

found that Barnes failed to prove (1) that the victim was diagnosed with

schizophrenia, (2) that the prosecutor failed to disclose that the medication was used

to treat schizophrenia, and (3) that the prosecutor had lied about the purpose for the

victim's taking the medication.  The state court's finding that the victim's taking

Geodon was disclosed during trial testimony defeats Barnes's contention that the

prosecutor violated *Brady* and, moreover, that the alleged *Brady* violation is "new evidence" that qualifies for the actual innocence exception to the limitation.

Accordingly, the respondents' motion to dismiss (Doc. 7) is **GRANTED**. Barnes's application for the writ of habeas corpus (Doc. 1) is **DISMISSED AS TIME-BARRED**.  The clerk must **CLOSE** this case.

**DENIAL OF BOTH
A CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Barnes is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Barnes must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because the application is clearly time-barred, Barnes cannot meet *Slack*'s prejudice requirement.  529 U.S. at 484.  Finally, because Barnes is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Barnes must pay the full $505 appellate filing fee unless the circuit court allows Barnes to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 1, 2017.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE